UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


GREGORY L. BAKER

     Applicant,

v.                                   Case No. 8:15-cv-878-T-23AEP

SECRETARY, Department of Corrections,

     Respondent.
_____/

## O R D E R

Gregory L. Baker applies for the writ of habeas corpus under 28 U.S.C.
§ 2254 (Doc. 1) and challenges the validity of his state convictions for trafficking in
illegal drugs and driving while his license was suspended or revoked, for which
convictions Baker serves fifteen years imprisonment. Numerous exhibits
("Respondent's Exhibit __") support the response. (Doc. 11) The respondent
admits the application's timeliness. (Doc. 11, p. 8)


## FACTS[1]

Officer Gregory Shone saw Baker driving a moped scooter. Officer Shone
checked the scooter's license plate and discovered the scooter was registered to
Baker, whose license was suspended. Officer Shone initiated a traffic stop and

---

[1] This factual summary derives from Baker's brief on direct appeal and the record.
(Respondent's Exhibits 1 and 5)

arrested Baker for driving while his license was suspended. During a search of Baker, Officer Shone found in Baker's pocket a prescription bottle bearing the name "Michael Jackson" and containing twenty-one oxycodone pills. After receiving a *Miranda* warning, Baker told Officer Shone that the pills belonged to his friend, Michael Jackson, who had dropped the pills when he and Baker were "hanging out." Baker was unable to provide Officer Shone with Jackson's address or telephone number but told Officer Shone that he planned to return the pills to Jackson.

Baker was charged with trafficking in oxycodone, possessing cocaine,[2] and driving while his license was suspended or revoked. Baker pleaded guilty to possessing cocaine and proceeded to a jury trial on the two remaining charges. A jury convicted Baker of both charges, and the judge sentenced him to fifteen years imprisonment for the trafficking conviction and to "time served" for the driving while license suspended or revoked conviction.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th

---

[2] During the search incident to Baker's arrest, the police found cocaine in a compartment under the seat of Baker's scooter. (Respondent's Exhibit 1A, June 16, 2010, transcript of jury trial, p. 17) Baker unsuccessfully moved to sever the cocaine possession charge. He pleaded guilty to that offense before the trial on the other two charges began. (Respondent's Exhibit 1, pp. 10–12; Exhibit 1A, June 16, 2010, transcript of jury trial, pp. 13–18) Baker was sentenced to fifty-two months imprisonment for possessing cocaine, which sentence runs concurrent with his sentences for the convictions on the other two charges.

Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a

highly deferential standard for federal court review of a state court adjudication,

states in pertinent part:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to,
>> or involved an unreasonable application of,
>> clearly established Federal law, as determined
>> by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an
>> unreasonable determination of the facts in light
>> of the evidence presented in the State court
>> proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court

interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a
> federal habeas court to grant a state prisoner's application for a writ
> of habeas corpus with respect to claims adjudicated on the merits in
> state court. Under § 2254(d)(1), the writ may issue only if one of the
> following two conditions is satisfied — the state-court adjudication
> resulted in a decision that (1) "was contrary to . . . clearly
> established Federal Law, as determined by the Supreme Court of
> the United States" or (2) "involved an unreasonable application
> of . . . clearly established Federal law, as determined by the
> Supreme Court of the United States." Under the "contrary to"
> clause, a federal habeas court may grant the writ if the state court
> arrives at a conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case differently than
> this Court has on a set of materially indistinguishable facts. Under
> the "unreasonable application" clause, a federal habeas court may
> grant the writ if the state court identifies the correct governing legal
> principle from this Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *See White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*); *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given

effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. "[T]he State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Wilson*, 138 S. Ct. at 1192.

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Baker's convictions and sentences. (Respondent's Exhibit 8)  Similarly, in another *per curiam* decision without a written opinion the state appellate court affirmed the denial of Baker's Rule 3.850 motion for post-conviction relief. (Respondent's Exhibit 15)  The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).  *See also Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster*, 563 U.S. at 181–82, explains, review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an

> examination of the state-court decision at the time it was made. It
> follows that the record under review is limited to the record in
> existence at that same time, i.e., the record before the state court.

Baker bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state court's rejection of Baker's post-conviction claims warrants deference in this case.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Baker claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is
> well settled and well documented. In *Strickland v. Washington*,
> 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the
> Supreme Court set forth a two-part test for analyzing ineffective

assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Baker must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691. To meet this burden, Baker must show "a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Baker cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). The required extent of counsel's investigation was addressed recently in *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014), *cert. denied sub nom., Hittson v. Chatman*, 135 S. Ct. 2126 (2015):

> [W]e have explained that "no absolute duty exists to investigate particular facts or a certain line of defense." *Chandler*, 218 F.3d at 1317. "[C]ounsel has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 (emphasis added). "[C]ounsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." *Chandler*, 218 F.3d at 1318. "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527, 123 S. Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty to raise a frivolous claim).

Under 28 U.S.C. § 2254(d) Baker must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 106. *See also Pinholster*, 563 U.S. at 202 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and [the] AEDPA."), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the

merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is "doubly deferential."), *cert. denied*, 134 S. Ct. 191 (2013).

In denying Baker's motion for post-conviction relief, the state court recognized that *Strickland* governs a claim of ineffective assistance of counsel. (Respondent's Exhibit 11, Order Denying Motion for Post-conviction Relief) Because the state court rejected the claims based on *Strickland*, Baker cannot meet the "contrary to" test in Section 2254(d)(1). Baker instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts. In determining "reasonableness," a federal application for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002). The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis.

**Ground One**

Baker contends that this trial counsel rendered ineffective assistance (1) by not requesting that the trial judge conduct a "genuineness inquiry" into the reason given

by the state for its peremptory challenge of prospective juror Ali, (2) by not pointing out to the trial judge the state's "misleading" characterization of Ali's statements during *voir dire*, and (3) by not renewing an objection to the jury panel when the jury was sworn.

The record shows that during *voir dire* the prosecutor inquired of Ali as follows (Respondent's Exhibit 1A, pp. 75–77)

> [PROSECUTOR]: On our survey do you . . . did you know anybody in law enforcement?
>
> PROSPECTIVE JUROR ALI: I have a relative that's in law enforcement but that's in a different state.
>
> [PROSECUTOR]: And is there anything about that that would affect the way you judge the credibility of a law enforcement officer?
>
> PROSPECTIVE JUROR ALI: No.
>
> [PROSECUTOR]: And what about if you or somebody you've known [has] been a victim of a crime before?
>
> PROSPECTIVE JUROR ALI: Sure.
>
> [PROSECUTOR]: Where was that?
>
> PROSPECTIVE JUROR ALI: It was here in Clearwater. Well, Pinellas County.
>
> [PROSECUTOR]: Was that you or somebody you know?
>
> PROSPECTIVE JUROR ALI: It was a relative.
>
> [PROSECUTOR]: Relative?
>
> PROSPECTIVE JUROR ALI: Yeah.
>
> [PROSECUTOR]: Was there anything about that offense that . . .

PROSPECTIVE JUROR ALI: It was a criminal act but it wasn't reported.

[PROSECUTOR]: Okay. So the authorities never got involved in that case?

PROSPECTIVE JUROR ALI: No.

[PROSECUTOR]: Would you be able to set that aside and be fair and impartial here today?

PROSPECTIVE JUROR ALI: Sure.

[PROSECUTOR]: And what about accused, you or somebody you know had been accused before of a crime?

PROSPECTIVE JUROR ALI: Again, I have to take into consideration the associates, the environment that you're in. Of course, yes.

[PROSECUTOR]: Was that here locally?

PROSPECTIVE JUROR ALI: Yes.

[PROSECUTOR]: Is there anything about those particular incidents that would affect the way that you sit here today?

PROSPECTIVE JUROR ALI: No.

[PROSECUTOR]: So you would be able to set that aside and be fair and impartial?

PROSPECTIVE JUROR ALI: Sure.

[PROSECUTOR]: What about witnesses in a crime, you or somebody you've known before?

PROSPECTIVE JUROR ALI: Yeah. Yes, I've seen things happen.

[PROSECUTOR]: You've seen things happen?

PROSPECTIVE JUROR ALI: Yeah.

[PROSECUTOR]: Was that here locally in Pinellas County as well?

PROSPECTIVE JUROR ALI: Yes.

[PROSECUTOR]: Is there anything about that that would affect the way you sit here today?

PROSPECTIVE JUROR ALI: Not at all.

[PROSECUTOR]: You'd be able to set that aside and be fair and impartial?

PROSPECTIVE JUROR ALI: Yes.

The prosecutor exercised a peremptory strike against Ali as follows

(Respondent's Exhibit 1A, p. 113):

THE COURT: State, I tender to you a jury consisting of Jurors One, Five, Seven, Eight, 11, 14.

[PROSECUTOR]: Move to strike 11, Judge.

THE COURT: All right. defense, I tender to you a jury consisting of Jurors One, Five, Seven, Eight, 14 and 15.

[COUNSEL]: Judge, can we have a race neutral reason for Number 11?

THE COURT: Back to Number 11, Mr. Ali. There was a peremptory strike by the State against Mr. Ali. State, state a race neutral reason. Mr. Ali is African American. The Defendant in this case is African American. State?

[PROSECUTOR]: Judge, he answered that he knew people who had been accused of crimes before but he never said that he had been accused of a crime before. In 2005 he had a battery charge here in Pinellas, we know [sic] filed a case.

THE COURT: All right. Fine. That's an adequate race neutral reason.

Trial counsel did not object to the composition of the jury before the jury was sworn.

Baker argues that the state failed to comply with *Melbourne v. State*, 679 So. 2d 759, 764 (Fla. 1996), which prescribes a three-step analysis for evaluating an objection to a party's race-based peremptory challenge to a venireman:

> A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.

Baker asserts that, although the first two prongs of *Melbourne* were met, the third prong was not satisfied because the trial court "failed to conduct an inquiry into the genuineness of the State's explanation to determine if it was pretextual." (Doc. 1, p. 6) Baker argues that if trial counsel had preserved this issue for appellate review, he would have received a new trial.

"[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). *See also Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (explaining that "[s]tate courts are the ultimate expositors of state law," and federal courts must abide by their rulings on matters of state law) (citations and footnote omitted). Although an ineffective assistance of counsel claim is a federal constitutional claim which the court considers in light of the clearly established law of *Strickland*, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law." *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984). *See also Will*

*v. Sec'y, Dep't of Corr.*, 278 F. App'x 902, 908 (11th Cir. 2008) ("Although an ineffective assistance of counsel claim is a federal constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law.' ") (citing *Alvord*, 725 F.2d at 1291); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under state law had [the applicant's counsel] done what [the applicant] argues he should have done . . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [the applicant's counsel] objected to the introduction of [the applicant's] statements based on [state law] — the objection would have been overruled . . . . Therefore, [the applicant's counsel] was not ineffective for failing to make that objection.").

The basis for Baker's ground of ineffective assistance of trial counsel is a failure to object to an alleged misapplication of state law under *Melbourne*.[3] Both the state post-conviction court in rejecting Baker's ground of ineffective assistance of counsel

---

[3] In his reply Baker specifically states that he "<u>did not</u>" raise this issue as a claim under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986)" and "[t]herefore, [he] is not required to show this court that he is entitled to relief under *Batson*." (Doc. 16, p. 5) (emphasis in original)

and the state appellate by affirming that rejection have answered the question of what would have happened if counsel had objected to both the trial judge's application of *Melbourne* and the composition of the jury. (Respondent's Exhibit 11, Order Denying Defendant's Motion for Post-Conviction Relief, pp. 1–2 and Exhibit 15) The state courts' interpretation of state law is afforded deference. Because the state post-conviction court and the state appellate court concluded that the trial judge properly applied state law in accepting the state's peremptory strike of venireman Ali, Baker establishes neither deficient performance nor resulting prejudice from counsel's alleged error. *Strickland*, 466 U.S. at 691–92. Baker fails to meet his burden of proving that the state court unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Two**

Baker contends that his trial counsel rendered ineffective assistance by not arguing that Section 893.135, Florida Statutes,[4] as applied to Baker, violates both the Fifth Amendment of the federal constitution and Article I, Section 9 of the Florida constitution. Baker asserts that his "possession of the illegal drugs was completely innocent and without criminal intent of any kind" but "the jury was instructed that it

---

[4] In 2002 the Florida legislature amended the Comprehensive Drug Abuse Prevention and Control Act and enacted section 893.101, Florida Statutes, which provides in part that "knowledge of the illicit nature of a controlled substance is not an element of any offense under [chapter 893]. Lack of knowledge of the illicit nature of a controlled substance is an affirmative defense to the offenses of this chapter."

was permitted to presume [he] was aware of the illicit nature of the controlled substance just because he was in possession of that substance." (Doc. 1, p. 13)

The state post-conviction court summarily denied this ground in Baker's Rule 3.850 motion (Respondent's Exhibit 11, Order Denying Defendant's Motion for Post-Conviction Relief, pp. 4–5) (court's record citation omitted):

> The Defendant alleges that counsel was ineffective for failing to argue that section 893.135, Florida Statutes, was unconstitutional as-applied to the Defendant due to the lack of a *mens rea* element. The Defendant contends that but for counsel's deficient conduct, there would have been a different outcome in this case. Further, the Defendant alleges that he was prejudiced by counsel's failure to raise this challenge because an as-applied challenge to a statute is waived for purposes of appeal if it is not first presented to the trial court.
>
> The Defendant is not entitled to relief on this claim. . . . [A] defendant alleging ineffective assistance of counsel for failure to preserve an issue for appeal "must show that had his counsel successfully preserved the issue[], [the appellate] court likely would have reversed his conviction on direct appeal." *Chattin*, 877 So. 2d at 749. The Defendant has not made such a showing here. As the Defendant concedes in his motion, the Florida Supreme Court recently ruled that the lack of a *mens rea* element for violations of chapter 893, Florida Statutes, does not impinge on any of a defendant's constitutional rights in *State v. Adkins*, 96 So. 3d 412 (Fla. 2012).[5] In so holding, the Court stated:
>
>> Because we conclude that the Legislature did not exceed its constitutional authority in redefining section 893.13 to not require proof that the defendant knew of the illicit nature of the controlled substance, we likewise conclude that the

---

[5] *State v. Adkins*, 96 So.3d 412 (Fla. 2012), holds that chapter 893, Florida Statutes, is not facially unconstitutional and does not violate due process because the statutes do not punish essentially innocent conduct. The state supreme court further concluded that there is no constitutional right to possess controlled substances or to be ignorant of the nature of the property in one's possession, and any concern about punishing innocent conduct is obviated by allowing a defendant to raise the affirmative defense of absence of knowledge of the illicit nature of a controlled substance.

Legislature did not violate due process by defining lack of such knowledge as an affirmative defense to the offenses set out in chapter 893. The Legislature's decision to treat lack of such knowledge as an affirmative defense does not unconstitutionally shift the burden of proof of a criminal offense to the defendant.

. . . .

In enacting section 893.101, the Legislature eliminated from the definitions of the offenses in chapter 893 the element that the defendant has knowledge of the illicit nature of the controlled substance and created the affirmative defense of lack of such knowledge. The statutory provisions do not violate any requirement of due process articulated by this Court or the Supreme Court. In the unusual circumstance where a person possesses a controlled substance inadvertently, establishing the affirmative defense available under section 893.101 will preclude the conviction of the defendant.

*Id.* at 422–423 (citations and quotations omitted). The jury was properly instructed on the elements that the State was required to prove and on the affirmative defense of lack of knowledge of the illicit nature of the controlled substance, which the Defendant raised in this case. Accordingly, section 893.135, Florida Statutes, has been held to be constitutional and the Second District Court of Appeal would not have been likely to reverse the Defendant's conviction had counsel raised an as-applied challenge to section 893.135 and preserved the issue for appeal. This claim is denied.

Baker's contention that "if the as-applied challenge to Fla. Stat. § 893.135 had been presented to the [state] court, the challenge would have been upheld or at least preserved for appellate review where it would have been upheld" is speculative and unsupported by any legal authority. Moreover, Baker fails to state how the application of section 893.135, Florida Statutes, in his case violated his federal right to due process under the Fifth Amendment. Baker cannot obtain relief on ground two because he

fails to satisfy *Strickland's* prejudice prong. *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (a federal court may not grant habeas relief "on the basis of little more than speculation with slight support."); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). Baker has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his ground of ineffective assistance of counsel. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Three**

Baker contends that his trial counsel rendered ineffective assistance by (1) not presenting a "prescription defense" to the trafficking charge and (2) not requesting a jury instruction on that defense.[6] Baker argues that sections 499.03 and 893.13(6), Florida Statutes, "provide exceptions to the prohibition on possession of certain controlled substances when such substance was obtained by a valid prescription."

---

[6] Section 893.13(6)(a), Florida Statutes (2009), provides:

> It is unlawful for any person to be in actual or constructive possession of a controlled substance unless such controlled substance was lawfully obtained from a practitioner or pursuant to a valid prescription or order of a practitioner while acting in the course of his or her professional practice or to be in actual or constructive possession of a controlled substance except as otherwise authorized by this chapter.

*See also Wagner v. State*, 88 So. 3d 250, 252 (Fla. 4th DCA 2012) ("A valid prescription is a complete defense to trafficking and a defendant is entitled to a jury instruction on the defense.") and *McCoy v. State*, 56 So. 3d 37, 39 (Fla. 1st DCA 2010) ("As reason dictates, the prescription defense is clearly available to those who have a valid prescription written directly on their behalf for the pills in their possession.") (citations omitted).

(Doc. 1, p. 16) Baker asserts that from the following facts "[a]n agency relationship between [me] and Jackson may be inferred" (Doc. 1, p. 18):

> Jackson was a friend of the petitioner for approximately 25 years. Jackson took care of the petitioner's mother prior to her demise, including doing her yard work, performing odd jobs around petitioner's mother's house, and driving her, including taking her to and from the doctors. Jackson also did lawn work f[or] the petitioner at the home where petitioner lived and where the prescription bottle with the pills w[as] found by the petitioner.

Baker asserts that (1) "fundamental error occurred when the court failed to instruct on a prescription defense that obviously applied to the trafficking charge," and (2) that absent trial counsel's failure to request a jury instruction on the prescription defense, "there is every reason to believe that . . . the jury . . . would have found [him] not guilty."

Baker relies on *Ramirez v. State*, 125 So. 3d 171 (Fla. 4th DCA 2013) — decided over two years after Baker's trial — in which Florida's Fourth District Court of Appeal (1) reversed the defendant's drug trafficking conviction after the trial court failed to charge the jury with a "prescription" defense and (2) concluded that Ramirez's counsel rendered ineffective assistance by not requesting a "prescription" defense. Baker includes in his application a table showing "the similarities between the facts of [h]is case and the facts in *Ramirez*." (Doc. 1 p. 19)

The state post-conviction court summarily denied this ground in Baker's Rule 3.850 motion (Respondent's Exhibit 11, Order Denying Defendant's Motion for Post-Conviction Relief, pp. 5–7) (court's record citation omitted):

The Defendant next alleges that counsel was ineffective for failing to present a prescription defense to the trafficking in oxycodone charge and for failing to request a jury instruction on such a defense. The Defendant alleges that he was prejudiced by counsel's errors because if a jury had been instructed on the prescription defense, there is a reasonable probability that the outcome of the trial would have been different. A claim that counsel was ineffective for failing to request a jury instruction on an applicable defense to the crime charged is cognizable in a motion for postconviction relief. *See Moragne v. State*, 761 So. 2d 440, 440 (Fla. 2d DCA 2000) (citing *Lenoir v. State*, 741 So. 2d 1148 (Fla. 2d DCA 1999)).

In support of his argument that a jury instruction should have been given regarding a prescription defense on an agency theory, the Defendant compares the facts of his case to those of *Ramirez v. State*, 38 Fla L. Weekly D148 (Fla. 4th DCA Jan. 16, 2013), which was decided well after the Defendant's conviction in this case. Counsel cannot be deemed ineffective for failing to anticipate future developments in the law. *Cherry v. State*, 781 So. 2d 1040, 1053 (Fla. 2000). Further, Standard Jury Instruction 3.6(n), which provides an affirmative defense to possession or trafficking in a controlled substance when the controlled substance was obtained pursuant to a valid prescription, was adopted in 2013. *See* Fla. Std. Jury Instr. (Crim.) 3.6(n); *In re Standard Jury Instructions in Criminal Cases* Report No. 2011–05, 37 Fla L. Weekly S733 (Fla. Nov. 21, 2012). Counsel's conduct cannot be deemed deficient when Florida caselaw addressing the prescription defense on an agency theory was very sparse at the time of the Defendant's trial, and counsel did not have the benefit of the *Ramirez* holding or the new jury instruction. *See Downs*, 451 So. 2d at 1107 (stating that assessing whether counsel's conduct was reasonable requires a consideration of all of the circumstances from the attorney's perspective at the time).

Moreover, a claim of ineffective assistance of counsel for failure to assert a particular defense can succeed only if the defendant shows that the defense would have been viable. *See Panagiotakis v. State*, 619 So. 2d 345, 346 (Fla. 2d DCA 1993). The comments to the new jury instruction explain that an additional instruction is necessary to assert the prescription defense based on an agency theory, citing to *McCoy v. State*, 56 So. 3d 37 (Fla. 1st DCA 2010), for guidance. *See* Fla. Std. Jury Instr. (Crim.) 3.6(n). *McCoy* held, as a matter of first impression, that the prescription defense was available to an innocent possessor of a controlled substance only when that person has a legally recognized reason for possessing

prescription medication that is prescribed to another. 56 So. 3d at 39. The First District defined a "legally recognized reason" to mean an agency relationship between the innocent possessor and the person prescribed the substance, further clarifying that an agent is "[o]ne who is authorized to act for or in place of another." *Id.* (citing Black's Law Dictionary 68 (8th ed. 2004)). Here, the testimony by both the Defendant and Michael Jackson (whose name was on the pill bottle) directly contradicts any assertion that the Defendant was an agent of Mr. Jackson authorized to act on his behalf.[7] As noted above, the Defendant and defense counsel did not have the benefit of the *Ramirez* holding, which recently held that the prescription defense was applicable to a situation involving an implied agency relationship between the defendant and his mother. *Ramirez*, 38 Fla. L. Weekly D148, at *4. Further, during her closing argument, defense counsel did argue that it was significant that the medication was prescribed to Mr. Jackson and that the arresting officer did not seek to verify that information. Accordingly, this claim is denied.

"No holding of the Supreme Court clearly establishes that in order to perform within the 'wide range of reasonable professional assistance,' *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065, counsel must accurately predict how the law will turn out or hedge every bet in the hope of a favorable development." *Rambaran v. Sec'y, Dep't of Corr.*, 821 F.3d 1325, 1334 (11th Cir. 2016).

In this circuit, we have a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel. *See, e.g.*, *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994) ("We have held many times that '[r]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.'") (citations to

---

[7] Jackson testified at trial that he had seen Baker only occasionally in the eighteen months before Baker was arrested. (Respondent's Exhibit 1B, p. 204) Jackson neither asked Baker to pick up medication for him nor authorized Baker to do so. (Respondent's Exhibit 1B, pp. 204–05) Baker testified on cross-examination at trial that Jackson neither told him that he could have the pills nor authorized him to pick up the pills from a pharmacy on Jackson's behalf. (Respondent's Exhibit 1B, p. 222)

three other Eleventh Circuit decisions omitted); *Davis v. Singletary*, 119 F.3d 1471, 1476 (11th Cir. 1997) ("[I]t was not professionally deficient for [counsel] to fail to anticipate that the law in Florida would be changed in the future to bar the admission of hypnotically induced testimony."); *Pitts v. Cook*, 923 F.2d 1568, 1572–74 (11th Cir. 1991); *Thompson v. Wainwright*, 787 F.2d 1447, 1459 n.8 (11th Cir. 1986) ("defendants are not entitled to an attorney capable of foreseeing the future development of constitutional law"). That rule applies even if the claim based upon anticipated changes in the law was reasonably available at the time counsel failed to raise it. *See, e.g., Pitts*, 923 F.2d at 1572–74 (holding that even though a claim based upon the 1986 *Batson* decision was "reasonably available" to counsel at the time of the 1985 trial, failure to anticipate the *Batson* decision and raise that claim was not ineffective assistance of counsel).

Further, the rule that it is not ineffective assistance for an attorney to fail to foresee a change in the law applies even when the change is such that the forfeited issue was, in hindsight, a sure fire winner. *Wright v. Hopper*, 169 F.3d 695, 707–08 (11th Cir. 1999) (*Batson* issue); *Elledge v. Dugger*, 823 F.2d 1439, 1443 (11th Cir. 1987) (*Michigan v. Mosley* issue); *Thompson*, 787 F.2d at 1459 n.8 (*Ake* issue).

*United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001) (brackets in original) (citations to additional cases omitted), *cert. denied*, 535 U.S. 979 (2002).

Baker fails to establish that the prescription defense was available to him at the time of his trial. As the state post-conviction court noted, in *McCoy v. State*, 56 So. 3d 37, (Fla. 1st DCA 2010), — decided over six months after Baker's trial — the state appellate court decided as a matter of first impression that the prescription defense is available to an innocent possessor of a controlled substance who has a legally recognized reason for possessing a drug prescribed to another individual. Ineffective assistance of counsel is not proven by showing that trial counsel failed to anticipate a change in the law. *See Ardley*, 273 F.3d at 993. Moreover, even if the application of

the prescription defense announced in *McCoy* and applied in *Ramirez* was available to him at the time of his trial, Baker cannot establish that his trial counsel rendered ineffective assistance by either not presenting the defense or not requesting a jury instruction on the defense. Baker testified at trial that he knew Jackson and that Jackson assisted Baker's mother around her house and her yard. (Respondent's Exhibit 1B, p. 209) However, Baker admitted on direct examination that Jackson (1) never told him that he could have his (Jackson's) pills and (2) never gave Baker authorization to pick up his pills from a pharmacy. (Respondent's Exhibit 1B, p. 222) Baker presented no evidence that he obtained the oxycodone pills pursuant to a valid prescription or that he was Jackson's agent. *See McCoy,* 56 So. 3d at 39 ("Thus, schedule III controlled substances may be 'lawfully obtained' by an agent of the prescription holder who can provide 'satisfactory patient information.' An agent is '[o]ne who is authorized to act for or in place of another.'" Black's Law Dictionary 68 (8th ed. 2004)). Baker fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground of ineffective assistance of counsel. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Four**

Baker contends that his trial counsel rendered ineffective assistance by not objecting to the "permissive presumption" included in the jury instruction on his affirmative defense. Specifically, Baker challenges the following instruction (Doc. 1, p. 22; Respondent's Exhibit 1B, pp. 277–78):

> [K]nowledge of the illicit nature of the controlled substance is not an element of the offense of trafficking in oxycodone. Lack of knowledge of the illicit nature of a controlled substance is an affirmative defense. Gregory Baker has raised this affirmative defense. However, you are permitted to presume that Gregory Baker was aware of the illicit nature of the controlled substance if you find that Gregory Baker was in actual or constructive possession of the controlled substance.
>
> If from the evidence you are convinced that Gregory Baker knew of the illicit nature of the controlled substance and all of the elements of the charge have been proved, you should find Gregory Baker guilty. If you have a reasonable doubt on the question of whether Gregory Baker knew of the illicit nature of the controlled substance, you should find Gregory Baker not guilty.

Baker claims that "[t]he jury was not instructed that . . .[,] while it was 'permitted,' it was not required to find that [Baker] was aware of the illicit nature of the controlled substance if it found that [Baker] was in actual or constructive possession of the controlled substance." (Doc. 1, p. 23)  Baker further claims that the jury was not instructed "that the presumption it was permitted to make of the evidence of knowledge of the illicit nature of the controlled substance may be contradicted and rebutted by other evidence demonstrating [Baker] was not aware of the illicit nature of the controlled substance." (Doc. 1, p. 23)  Baker alleges that "[i]f the jury had been properly instructed, there was a reasonable probability that the jury would have found that [he] did not know of the illicit nature of the oxycodone, notwithstanding his actual possession of the oxycodone." (Doc. 1, p. 27)

The state post-conviction court summarily denied this ground in Baker's Rule

3.850 motion (Respondent's Exhibit 11, Order Denying Defendant's Motion for

Post-Conviction Relief, p. 7) (court's record citation omitted) (brackets in original):

> The Defendant claims that counsel was ineffective for failing to object to the permissive presumption jury instruction that was given as to the trafficking in oxycodone charge. Specifically, because the Defendant raised the affirmative defense that he did not have knowledge of the illicit nature of the substance in his possession, the jury was instructed that they were "permitted to presume that [the Defendant] was aware of the illicit nature of the controlled substance if [they found] that [the Defendant] was in actual or constructive possession of the controlled substance." The Defendant asserts that this permissive instruction was, in effect, an irrebuttable presumption because the jury was told that they were "permitted" to make this finding instead of being told that they were "permitted, but not required[,]" to make this finding. The Defendant alleges that he was prejudiced by counsel's failure to object to this jury instruction because there is a reasonable probability that the outcome of the proceeding would have been different if the jury had been properly instructed.
>
> The Court finds this claim to be without merit. The jury was given the standard jury instruction on the affirmative defense of lack of knowledge of the illicit nature of the controlled substance. Fla. Std. Jury Instr. (Crim.) 25.11; *see also* § 893.101(3), Fla. Stat. The relevant portion of the jury instructions as read by the Court stated:
>
>> [K]knowledge of the illicit nature of the controlled substance is not an element of the offense of trafficking in oxycodone. Lack of knowledge of the illicit nature of a controlled substance is an affirmative defense. Gregory Baker has raised this affirmative defense. However, you are permitted to presume that Gregory Baker was aware of the illicit nature of the controlled substance if you find that Gregory Baker was in actual or constructive possession of the controlled substance.
>>
>> If from the evidence you are convinced that Gregory Baker knew of the illicit nature of the

> controlled substance and all of the elements of the
> charge have been proved, you should find Gregory
> Baker guilty. If you have a reasonable doubt on the
> question of whether Gregory Baker knew of the
> illicit nature of the controlled substance, you
> should find Gregory Baker not guilty.

> Trial counsel cannot be ineffective for failing to object to a
> standard jury instruction that has not been invalidated by the
> Florida Supreme Court. *Rodriguez v. State*, 919 So. 2d 1252, 1272
> (Fla. 2005). This claim is denied.

To show that counsel rendered ineffective assistance by not objecting to a jury

instruction, Baker must show that (1) the instruction was improper, (2) a reasonably

competent attorney would have objected to the instruction, and (3) the failure to object

prejudiced him. *Daugherty v. Dugger*, 839 F.2d 1426, 1428 (11th Cir. 1988). Baker fails

to satisfy these requirements. The state post-conviction court concluded that the

instruction given was consistent with Florida's standard jury instructions. "[A] state

court's interpretation of state law . . . binds a federal court sitting in habeas corpus."

*Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Baker cites no Florida case invalidating the

jury instruction given in his case. He demonstrates neither that the instruction was

"defective" under state law nor that a reasonable probability exists that the outcome of

his trial would have been different had counsel objected to the jury instruction on the

permissive presumption. Accordingly, because he cannot demonstrate prejudice under

*Strickland*, Baker fails to meet his burden of proving that the state court either

unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this

ground of ineffective assistance of counsel. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Eight**

Baker contends that his appellate counsel rendered ineffective assistance by not arguing on direct appeal that the "permissive presumption" jury instruction violates Baker's federal right to due process. Baker asserts that "[u]nder the facts of this case, . . . the interests of justice present a compelling demand for application of the fundamental error doctrine." (Doc. 1, p. 51) The state appellate court denied this ground of ineffective assistance of appellate counsel in Baker's state habeas petition. (Respondent's Exhibit 23)

The *Strickland* standard of review applies to a claim of ineffective assistance of appellate counsel. *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992). To establish a claim, Baker must show both that appellate counsel performed deficiently and that the deficient performance resulted in prejudice. To demonstrate deficient performance, Baker must show that appellate counsel's failure to discover a non-frivolous issue and file a merits brief raising that issue fell outside the range of professionally acceptable performance. *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). To demonstrate prejudice, Baker must show that a reasonable probability exists that, but for appellate counsel's unreasonable failure to file a merits brief on a particular issue, Baker would have prevailed on appeal. *Smith*, 528 U.S. at 285–86.

The trial judge read to the jury the standard instruction on the permissive presumption. Baker provides no evidence establishing an error in the instruction. Moreover, trial counsel neither objected to the permissive presumption instruction nor

moved for a judgment of acquittal based on Baker's lack of knowledge of the illicit

nature of the controlled substance. Accordingly, appellate counsel could not have

argued on direct appeal that the "permissive presumption" jury instruction violates

Baker's federal right to due process because the issue was not properly preserved by

objection in the trial court. Baker cannot establish prejudice as a result of appellate

counsel's omission because no reasonable probability exists that had appellate counsel

raised the jury instruction issue, the result of the appeal would have been different. *See*

*Pinkney v. Sec'y, Dep't of Corr.*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("Prejudice requires

a reasonable probability of a different result, *Strickland*, 466 U.S. at 694, 104 S. Ct. at

2068, and there is no reasonable probability that the result of an appeal would have

been different if appellate counsel had raised an issue the court would have refused to

consider because it was not preserved in the trial court.").

Baker also fails to establish fundamental error. *Pinkney*, 876, F.3d at 1296–97,

explains:

> Under Florida law, if a defendant fails to object to a jury
> instruction at trial, the instruction may be challenged on appeal
> only if it amounts to "fundamental error." *See State v. Delva*, 575
> So.2d 643, 644 (Fla. 1991) ("Instructions . . . are subject to the
> contemporaneous objection rule, and, absent an objection at trial,
> can be raised on appeal only if fundamental error occurred.").
> That means unless the unpreserved jury instruction error that
> appellate counsel failed to raise is fundamental error, the Florida
> appellate courts would not have granted relief even if counsel had
> raised it on appeal. *See id.*; *Rutherford v. Moore*, 774 So. 2d 637,
> 646 (Fla. 2000) ("Because this issue was not preserved for review,
> if it had been raised on appeal, it would have warranted reversal
> only if it constituted fundamental error . . . ."). Fundamental
> error, the Florida decisions teach, is "error that reaches down into
> the validity of the trial itself to the extent that a verdict of guilty

> could not have been obtained without the assistance of the alleged error." *Kilgore v. State*, 688 So. 2d 895, 898 (Fla. 1996) (alteration and quotation marks omitted).

Baker fails to demonstrate fundamental error because he does not show that trial counsel's failure to object to the instruction affected the validity of the trial. Consequently, Baker shows neither that appellate counsel unreasonably elected to not raise this issue on appeal nor that he would have prevailed on appeal if appellate counsel had raised the issue. *Robbins*, 528 U.S. at 285–86. *See also Barnes*, 463 U.S. at 751–52 ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Because he establishes neither deficient performance nor resulting prejudice, Baker cannot prevail on this ground of ineffective assistance of appellate counsel. The state appellate court's denial of relief was neither contrary to, nor an unreasonable application of, the *Strickland* standard. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Five**

Baker contends that his trial counsel rendered ineffective assistance (1) by not presenting a "temporary possession" defense and (2) by not requesting a jury instruction on that defense. Baker claims that his trial counsel erred by not asserting as an affirmative defense to the trafficking charge that Baker only temporarily possessed the oxycodone "in order to lawfully dispose of the contraband." (Doc. 16, p. 9) Baker further contends that fundamental error occurred in his case when the trial court

"failed to instruct on a defense that obviously applied to the trafficking charge."

(Doc. 1, p. 31)

The state post-conviction court summarily denied this ground in Baker's Rule 3.850 motion (Respondent's Exhibit 11, Order Denying Defendant's Motion for Post-Conviction Relief, pp. 8–9) (court's record citations omitted):

> The Defendant claims that counsel was ineffective for failing to present a defense of temporary possession to lawfully dispose of contraband as to the trafficking in oxycodone charge, and to request a jury instruction on this defense. The Defendant alleges that he was prejudiced because if counsel had properly requested that the jury be given this defense instruction, there is a reasonable probability that the outcome of the trial would have been different.
>
> The Defendant is not entitled to relief on this claim. First, as noted above, counsel cannot be deemed ineffective for failing to anticipate future changes in the law. *Cherry*, 781 So. 2d at 1053. Standard Jury Instruction 3.6(m), which provides the affirmative defense of temporary possession of a controlled substance for legal disposal, was adopted in 2013. *See* Fla. Std. Jury Instr. (Crim.) 3.6(m); *In re Standard Jury Instructions in Criminal Cases – Report No. 2011-05*, 37 Fla. L. Weekly S733 (Fla. Nov. 21, 2012).[8]

---

[8] The standard jury instruction on the affirmative defense of temporary possession provides, in relevant part:

> 3.6(m) AFFIRMATIVE DEFENSE: TEMPORARY POSSESSION OF CONTROLLED SUBSTANCE FOR LEGAL DISPOSAL
>
> It is a defense to the charge of . . . [trafficking via possession] for a person to briefly possess a controlled substance for the sole purpose of legal disposal. In order to find the defendant briefly possessed a controlled substance for the sole purpose of legal disposal, you must find all of the following:
>
> > 1. (Defendant) possessed the controlled substance.
> > 2. (Defendant) acquired the controlled substance without unlawful intent.
> > 3. The possession of the controlled substance was brief

(continued...)

Further, a defendant can successfully show that counsel was ineffective for failing to present a defense only if the defendant shows that the particular defense was viable. *See Panagiotakis*, 619 So. 2d at 346. Prior to the instruction's effective date, there were very few Florida cases providing the standard for this defense. The leading case on this defense, *Stanton v. State*, looked to decisions in Alaska and California for guidance before reversing a defendant's conviction for possession of cocaine, when the defendant had been handed a rock of crack cocaine and then immediately approached a police officer and turned the contraband over. 746 So. 2d 1229, 1230 (Fla. 3d DCA 1999). In *Ramsubhag v. State*, which the Defendant cites to in support of his claim, the Fourth District Court of Appeal declined to find error in the trial court's refusal to instruct the jury on the "lawful disposition" defense, finding the facts of the case distinguishable from those in *Stanton*. 937 So. 2d 1192, 1195 (Fla. 4th DCA 2006). The Fourth District in *Ramsubhag* emphasized *Stanton's* narrow applicability, explaining that the crucial factor in determining the applicability of this defense is temporary control over the contraband, and concluded that the defendant's control could not be deemed to have been temporary where he was in possession of the contraband for at least ten hours and failed to dispose of it. *Id.* The facts of the Defendant's case are much more similar to those in *Ramsubhag* than those in *Stanton*. The Defendant testified that he found the oxycodone "[p]robably a couple days before" and "probably one or two days before" he was arrested and subsequently searched, at which point the officer found the pills in his pocket. Thus, the Defendant's possession of the oxycodone would not be considered "temporary" for purposes of the temporary possession defense. Counsel cannot be deemed ineffective for failing to argue for the expansion of the very narrow "temporary possession" defense to apply to the facts of the Defendant's case when the applicable law and the evidence in this case did not support such an argument. *See State v. Williams*, 797 So. 2d 1235, 1238 (Fla. 2001) (stating that a defendant alleging ineffective assistance of counsel must overcome the strong presumption that counsel rendered professional assistance and that the issue was not a matter of sound trial strategy). Moreover, in addition to arguing that the

---

[8](...continued)

and (defendant) sought to dispose of the controlled substance without delay.

 4. The temporary possession was solely for the purpose of legal disposal.

Defendant did not know the illicit nature of the substance, counsel repeatedly emphasized during her closing argument that the Defendant's sole intention in possessing the bottle of pills was to return them to Michael Jackson, whose name was on the label. The Defendant's claim is denied.

Baker fails to show the viability of a "temporary possession" defense in his case. Baker admits in his application that he "has not been able to find a Florida case which approved such a defense where temporary custody of the controlled substance was taken in order to return the contraband to the rightful owner." (Doc. 1, p. 30) This court must defer to the state court's determination that Baker had no viable temporary possession defense under Florida law. *Richey*, 546 U.S. at 76; *Alvord*, 725 F.2d at 1291. *See also Pinkney*, 876 F.3d at 1299 ("As the Supreme Court and this Court have repeatedly acknowledged, it is not a federal court's role to examine the propriety of a state court's determination of state law.") (citations omitted)). Baker fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground of ineffective assistance of counsel. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Six**

Baker contends that his trial counsel rendered ineffective assistance by not arguing that Baker's sentences violate the Eighth Amendment. Baker alleges that his trial counsel should have argued that the sentences are "cruel and unusual" and "grossly disproportionate" to Baker's crimes. Baker "suggests that it is cruel, for a man . . . doing what he thought was a good deed in picking up a lost prescription

bottle and holding it until he could return it to a friend, to go to prison for

fifteen . . . years." (Doc. 1, p. 41) Baker argues that his trial "counsel's performance

fell below an objective standard of reasonableness by not researching, investigating,

and presenting to the court an as-applied challenge to his sentence as violating the

Eighth Amendment to the United States Constitution and Article 1, Section 17 of the

Florida Constitution."[9] (Doc. 1, p. 42)

The state post-conviction court summarily denied this ground in Baker's Rule

3.850 motion (Respondent's Exhibit 11, Order Denying Defendant's Motion for

Post-Conviction Relief, pp. 9–10) (court's record citations omitted):

> Finally, the Defendant claims that counsel was ineffective for
> failing to object to the sentence that was imposed on the grounds
> that, given the facts of this case, it violates the Eighth
> Amendment of the United States Constitution and Article I,
> section 17 of the Florida Constitution. The Defendant alleges that
> but for counsel's deficient conduct, there is a reasonable
> probability that the outcome of the proceeding would have been
> different. The Defendant further contends that counsel's failure to
> raise this as-applied constitutional challenge at the trial level
> waived the issue for direct appeal.
>
> The Court finds that this claim is without merit. The Defendant
> was sentenced to fifteen years imprisonment for the trafficking
> charge, with a fifteen-year minimum mandatory pursuant to
> section 893.135(1), Florida Statutes, and fifty-two months for the
> possession of cocaine. Trafficking in oxycodone is a first-degree

---

[9] To the extent he asserts a claim under the Florida constitution, Baker cannot obtain relief because the claim presents no federal constitutional question. 28 U.S.C. § 2254(a). *See Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."), and *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). The limitation on federal habeas review to a ground alleging a federal constitutional error applies with equal force when the ground, which actually involves a state law issue, is couched in terms of a Fourteenth Amendment due process violation. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).

felony punishable by a maximum term of thirty years imprisonment, and when the amount of oxycodone involved is more than fourteen grams but less than twenty-eight grams, the Court must impose a fifteen-year minimum mandatory. *See* § 893.135(1)(c)(l), Fla. Stat., § 775.082(3)(b), Fla. Stat. Possession of cocaine is a third-degree felony, punishable by a maximum term of five years imprisonment. *See* § 893.13(6)(a), Fla. Stat., § 775.082(3)(d), Fla Stat. The imposition of a sentence that is provided by statutory law does not constitute cruel or unusual punishment. *Turner v. State*, 745 So. 2d 351, 353 (Fla. 1st DCA 1999) (citing *Jones v. State*, 701 So. 2d 76, 79 (Fla. 1997)).

Further, counsel was not ineffective for failing to object to the sentences in order to preserve the issue for appeal. As noted above, in order to show that counsel was ineffective for failing to preserve an issue for appeal, a defendant must show that had counsel properly preserved the issue, the appellate court would have likely reversed on appeal. *Chattin*, 877 So. 2d at 749. As the Defendant's sentences were not imposed in violation of the Florida Constitution's prohibition on cruel or unusual punishment, it is not likely that the appellate court would have reversed. This claim is denied.

The Eighth Amendment "prohibits . . . sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284 (1983). Generally, a sentence within the limits imposed by statute is neither excessive, nor cruel and unusual under the Eighth Amendment. *United States v. Johnson*, 451 F.3d 1239, 1243 (11th Cir. 2006). Baker was sentenced within the limits imposed under Florida law. *See* Fla. Stat. § 775.082. Baker's is not an "extraordinary case" in which the sentences are so grossly disproportionate to the offenses of conviction that the sentences violate the Eighth Amendment. Baker presents no basis upon which trial counsel could have objected to the lawfully imposed sentences. Baker fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by

rejecting this ground of ineffective assistance of counsel.  28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Seven**

Baker contends that his appellate counsel rendered ineffective assistance by arguing on direct appeal that the trial court erred by denying his judgment of acquittal based on the state's failure to establish that Baker "possessed" the oxycodone pills. Baker claims that "[t]here was never any evidence presented to the jury by the state or defense with regard to this issue and this issue was not the issue presented to the trial court for consideration on [his] motion and renewed motion for judgment of acquittal."  (Doc. 1, p. 45)  Rather, Baker alleges, his lack of knowledge of the illicit nature of the pills "was the one and only issue as to [his] criminal liability or guilt in this case."  (Doc. 1, p. 44)  Baker asserts that appellate counsel's argument as to the possession element of the trafficking charge "was tantamount to presenting no argument at all."  (Doc. 1, p. 45)  p. 51)  The state appellate court denied this ground of ineffective assistance of appellate counsel in Baker's state habeas petition. (Respondent's Exhibit 23)

The record refutes Baker's contention that the possession issue "was not the issue presented to the trial court for consideration on [his] motion and renewed motion for judgment of acquittal."  Trial counsel argued at the close of the state's case (Respondent's Exhibit 1A, p. 165):

> Judge, at this time the defense would move for a motion for judgment of acquittal. Given the facts in the light most favorable to the State, they have failed to prove a *prima facie* case of guilt.

> They have not proved that Mr. Baker knowingly possessed the
> oxycodone.

The trial court denied the motion for judgment of acquittal. (Respondent's Exhibit 1A, p. 166) Trial counsel renewed the motion after the defense rested, which motion the trial court denied. (Respondent's Exhibit 1B, p. 224) Appellate counsel challenged on appeal the denial of Baker's motion for judgment of acquittal based on trial counsel's argument that the state failed to prove possession. Baker presents no basis, aside from his dissatisfaction with the outcome of his direct appeal, to support a finding of either deficient performance or prejudice by his appellate counsel. The state appellate court's denial of this ground is neither contrary to, nor an unreasonable application of, the *Strickland* standard. 28 U.S.C. § 2254(d)(1), (d)(2).

Accordingly, Baker's application for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk must enter a judgment against Baker and close this case.

### DENIAL OF BOTH
### A CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL IN FORMA PAUPERIS

Baker is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Baker must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. See 28 U.S.C.

§ 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Baker is entitled to neither a COA nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Baker must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on March 28, 2019.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE